Campbell *v.* Campbell, Appellant.

Argued November 19, 1931.

Before

Trexler, P. J., Keller, Linn, Gawthrop, Cunning-
ham, Baldrige and Stadtfeld, JJ.

*John E. McDonough* and with him *M. S. Reps* and
*R. P. Lessy,* for appellant.

*John V. Diggins,* for appellee.

Opinion by Baldrige, J., March 5, 1932:

This is an appeal from the decree of the court be-
low granting a divorce to the libellant.

The causes of divorce set forth in the libel were
cruel and barbarous treatment and indignities to the
person. The master recommended a decree in favor of
the complainant on both grounds. Exceptions filed
were sustained as to cruel and barbarous treatment
and a decree entered by the learned court below on
the second charge.

The parties were married in Philadelphia on May
24, 1916, and lived together, prior to the husband's
withdrawal from the home, at Atlantic City, Eddy-
stone and Chester. In the fall of 1922, they moved
to Ridley Park, where they continued their marital
relations until the 21st day of June, 1929, when the

libellant left his family and went to Chester to reside. During the thirteen years the parties lived together, the respondent bore her husband six children, two of whom are living—a boy, 10, and a girl, 13, who make their home with their mother.

The libellant's charges against his wife had their inception a short time after the marriage and include nagging, vulgar and profane language; failure to cook his meals, to wash dishes and bedclothes; permitting the house to become infested with vermin; striking him with a piano stool, a brush, soiled cloths, but no dates were given of the alleged assaults; complaining of his paying attention to other women; not permitting him to sleep. This couple evidently had many quarrels but they were not of a serious nature and reconciliation in such instances soon followed. Their difficulties culminated, under the respondent's testimony, as a result of her invalid sister, who was married to the libellant's brother, bringing her child to their home. It is unnecessary to discuss all the domestic troubles of this unfortunate pair, but we are all of the opinion that the testimony does not reveal conduct upon the part of the wife of such a serious character as to warrant the granting of a divorce.

Section 10 of the Act of May 2, 1929, P. L. 1237, provides, inter alia, that it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged that the other spouse ''(f) Shall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome.'' The course of conduct amounting to such indignities as would justify a divorce is incapable of specification or of exact definition. Each case necessarily depends upon its own facts. The test to be applied is: Does the proof clearly and fully establish that the wife offered such indignities as to

render the husband's condition intolerable and life burdensome?

A considerable portion, but not all, of the testimony relates back to years prior to the time the libellant left his home, when the wife was striving to keep house under very difficult conditions. It covered a period when they were residing at Eddystone and she was giving birth to children, and, without help, keeping lodgers who were employed at the munition plants. The crowded conditions made it necessary for two sets of lodgers to occupy the same rooms, so that the beds were used both day and night. In such circumstances, it is expecting too much of a wife at all times to keep her house neat and clean. The respondent contributed from her own funds to the purchase of a lot, and paid $1,200, in addition, on account of the building of their house; the remaining amount expended was covered by a mortgage of $3,800, which was unpaid. About a year before the husband left, the wife went to work, with her husband's consent, in a woolen mill, endeavoring to augment the family finances as they were threatened with foreclosure of their mortgage. It would, therefore, seem that she was making an honest effort to maintain the home. While the husband complained of his wife's neglect and failure to look after the house, he conceded that she did darn his socks, wash his clothes, etc. There was no definite proof that her actions caused an impairment of his health or that her conduct seriously interfered with his work. There was some corroboration of the charges made by the husband, and the wife conceded that at times the dishes were not washed promptly and that her husband did aid in the cooking; some of his cooking was due to the irregular hours he returned from his work. Owing to the conditions that prevailed, she was, no doubt, unable to do as much housework, or do it as promptly, as she otherwise would have done. We find no con-

vincing testimony of her lack of industry. She denies that she seriously charged him with having undue familiarity with other women prior to his leaving home, or that she ever used profane or vulgar language, or nagged at him; and alleges that whatever differences they had were incident to the ordinary family life; that she endeavored to the best of her ability to do her part as a dutiful wife. She stated that she entertained a real affection for her husband and was anxious for him to return to their home. There was testimony by neighbors and visitors that the house appeared to be comfortable; that she made her children's clothes, and while the children were not immaculate, they always appeared reasonably clean; and that there was no indication of discord. It is true she learned that after her husband had left his home he conveyed, in his automobile from the desertion court, a woman who served his meals at a hotel where he resided. It is not unnatural that she gave expression to her suspicions aroused thereby. There was another incident when Miss Brice, a public health nurse, called at the respondent's home in response to a report to investigate the case of the brother's invalid wife. On this occasion she stated to Miss Brice that her nurses had influenced her husband to leave home, and made other charges, and used language that was not commendable; but this was after her husband had left and she, no doubt, with some justification, was in an irritable frame of mind.

The language used in Forrester v. Forrester, 77 Pa. Superior Ct. 364, 366, is peculiarly applicable: "While there are many petty and trifling incidents mentioned that would be a reasonable cause for temporary irritation, their continued living together and rearing children is an apparent answer to the grievous character of his complaints. It is but fair to note that every material allegation made by her husband was positively

denied or explained by the wife." See also Wark v. Wark, 73 Pa. Superior Ct. 274; Heckman v. Heckman, 81 Pa. Superior Ct. 370; Gandy v. Gandy, 90 Pa. Superior Ct. 146.

We have carefully read all the testimony and, after giving due consideration to the case in all its aspects, we are convinced that the libellant has not presented such clear and satisfactory evidence as, in the face of the respondent's testimony, should entitle him to a divorce.

The decree is therefore reversed at the costs of the appellee.